1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

11
12
13
14
15
16

FEDERAL TRADE COMMISSION,

Plaintiff,

v.

ONLINEYELLOWPAGESTODAY.COM,
INC. et al.,

Defendants.

CASE NO. C14-838 RAJ

ORDER

17
18
19
20
21
22
23
24
25
26
27

This matter comes before the court on plaintiff the Federal Trade Commission's
("FTC") ex parte motions to file under seal temporarily and for temporary restraining
order with asset freeze and other relief.  Dkt. ## 2, 3.  As alleged in plaintiff's complaint,
the defendants are four entities and one individual.  Two of the entities are Delaware
corporations with a principal place of business in Montreal, Quebec.  Dkt. # 1 (Compl.)
¶¶ 6 (OnlineYellowPagesToday.com, Inc.), 7 (USYellowPageDirectory.com, Inc.).  Two
of the entities are Quebec corporations with a principal place of business in Montreal,
Quebec.  *Id.* ¶¶ 8 (7703236 Canada, Inc. dba OnlineYellowPagesToday.com, Target
marketing and Oniks Media), 9 (7095333 Canada, Inc. dba USYellowPage
Directory.com and Oniks Media).  All four entities transact business in this District and

ORDER- 1

throughout the United States.  *Id.* ¶¶ 6-9.  The individual defendant, Oni Nathifa Julien, is or has been an owner, officer or director of all four entities, and has transacted business in this District and throughout the United States.  *Id.* ¶ 10.  Defendants have represented themselves to consumers as USYellowPageDirectory.com from approximately 2009 to 2012, and as OnlineYellowPagesToday.com from approximately 2011 to present.  *Id.* ¶ 12.

Plaintiff alleges that defendants operated a common enterprise while engaging in deceptive business practices.  *Id.* ¶ 11.  Defendants allegedly market listings in their business directories by making misrepresentations during unsolicited outbound telephone calls to consumers by indicating that the consumer previously was, or already is, listed in defendants' business directory.  *Id.* ¶ 15.  Based on these alleged misrepresentations, many consumers believe that they are on the business directory and confirm the business address and contact information.  *Id.* ¶ 16.  Defendants allegedly record these telephone calls and later use these recordings to attempt to convince a representative of the consumer to pay for a listing with defendant's business directory.  *Id.*  After these telephone calls, defendants send invoices to the consumer for $479.95 or more, and many consumers that have not contracted for defendants' listing service pay the invoice because of the defendants' representation that the consumer agreed to pay for the listing. *Id.* ¶ 18.  If a consumer fails to pay, defendants send letters or place telephone calls demanding payment, and, if the consumer refuses to pay, defendants allegedly threaten to send the consumer to collection, to damage consumers' credit ratings, and to file a lawsuit.  *Id.* ¶¶ 19, 21.  Many consumers pay in response to defendants' collection tactics and threats to protect their credit rating or to avoid being sued.  *Id.* ¶ 22.

Under Rule 65(b), "[t]he court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:"

(A)  specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

(B)  the movant's attorney certifies in writing any efforts made to give notice and reasons why it should not be required.

Fed. R. Civ. Proc. 65(b)(1).

The FTC has also invoked 15 U.S.C. § 53(b), section 13(b) of the Federal Trade Commission Act ("FTCA").  Section 53(b) permits the FTC to seek a TRO or injunction against a person or entity that it reasonably believes to be violating, or is about to violate, any provision of law enforced by the FTC when enjoining the violation is in the public interest.  15 U.S.C. § 53(b); *see FTC v. H.N. Singer, Inc.*, 668 F.2d 1107, 1111 (9th Cir. 1982) (holding that section 13(b) of the FTCA gives district courts the authority to grant permanent injunctions to enjoin acts or practices that violate the law enforced by the FTC, and to grant whatever preliminary injunctions are justified by the usual equitable standards that are sought in accordance with Rule 65(a)).  "Upon a proper showing that, weighing the equities and considering the Commission's likelihood of ultimate success, such action would be in the public interest, and after notice to the defendant, a temporary restraining order or preliminary injunction may be granted without bond . . . ."[1]  15 U.S.C. § 53(b).  Thus, section 53(b) places a lighter burden on the FTC because it does not require a showing of irreparable harm to obtain a TRO or preliminary injunction. *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1233 (9th Cir. 1999).  "Under this more lenient standard, 'a court must 1) determine the likelihood that the Commission will ultimately succeed on the merits and 2) balance the equities.'"  *Id.*

However, section 53(b) explicitly requires notice to the defendant prior to the court granting a TRO or preliminary injunction without bond (15 U.S.C. § 53(b)), and the court has not found precedential authority relieving the FTC of its obligation to satisfy

---

[1] The court notes that plaintiff has provided ample evidence of its likelihood to succeed on the merits.

ORDER- 3

Rule 65(b) when seeking *ex parte* relief.  Indeed, the strict restrictions imposed by Rule 65(b) reflect the fact that "jurisprudence runs counter to the notion of court action taken before reasonable notice and opportunity to be heard has been granted to both sides of a dispute."  *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 439 (1974).  "*Ex parte* temporary restraining orders are no doubt necessary in certain circumstances, but under federal law they should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer."  *Id.* (citation omitted).  "Consistent with this overriding concern, courts have recognized very few circumstances justifying the issuance of an ex parte TRO."  *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006).  "In cases where notice could have been given to the adverse party, courts have recognized 'a very narrow band of cases in which ex parte orders are proper because notice to the defendant would render fruitless the further prosecution of the action.'"  *Id.*  In such cases, plaintiff must show that defendants would have disregarded a direct court order and disposed of the goods within the time it would take for a hearing and must support such assertions by showing that the adverse party has a history of disposing of evidence or violating court orders or that persons similar to the adverse party have such a history.  *Id.*

Plaintiff provides no evidence that defendants have a history of disregarding court orders, disposing of evidence, or transferring or hiding assets.  Nor has plaintiff provided any evidence that individuals or entities similar to defendants have such a history.  Rather, the evidence demonstrates that when confronted by the Better Business Bureau ("BBB"), a government agency, defendants have stopped pursuing the consumers who filed the complaint with the BBB.

Defendants point to the declaration of Maxine Stanswell, an attorney employed by the FTC, in arguing that the "FTC's experience shows that other defendants engaged in fraudulent schemes similar to Defendants will often withdraw funds from bank accounts and move or shred documents upon learning of impending legal action."  Dkt. # 3 at 20

Case 2:14-cv-00838-RAJ   Document 6   Filed 06/10/14   Page 5 of 7

(Mot. at 17).  However, Ms. Stansell, as a percipient witness, improperly relies on legal

analysis and conclusions, improper opinion testimony, and facts outside of her personal

knowledge.  When she provides the factual basis that is purportedly within her personal

knowledge, her statements are vague, conclusory, and non-specific.   She states that

"based on the FTC's past experience with other similar defendants as well as the actions

of these Defendants, to [provide notice] would likely result in immediate and irreparable

injury to the Court's ability to achieve final effective relief for consumers in this case."

Dkt. # 4 (Stansell Decl.) ¶ 6.  After summarizing the facts as provided by other witnesses,

she states that the "aforementioned deceptive behavior on the Defendants' part

demonstrates a likelihood that Defendants have little concern for following the law and

are likely to dissipate or conceal assets, or destroy or conceal evidence of their fraudulent

conduct, if they are given advance notice of Plaintiff's request for temporary relief."  *Id.* ¶

9.  She then concludes that given defendants' history of deceptive conduct, as described

by consumers, "and the FTC's past experience with similar defendants, as further

explained below, there is good cause to believe that immediate and irreparable harm to

Plaintiff's ability to achieve effective final relief for consumers, including monetary

redress or restitution, may occur if . . . Defendants receive advance notice of the lawsuit

and the TRO Motion."  *Id.*  Ms. Stansell then proceeds to cite a number of cases brought

by the FTC, provided on information and belief from FTC staff, in which various

defendants transferred assets or destroyed evidence.  *Id.* ¶11.

    However, Ms. Stansell does not explain how the defendants in those cases are

similar to the defendants in this case.  Additionally, while Ms. Stansell cites a number of

district court decisions in the Ninth Circuit that have granted similar motions brought by

the FTC, including two from this District in which the court simply signed the proposed

order prepared by the FTC, Ms. Stansell has failed to identify the decisions that have

refused to grant such a TRO for lack of notice or failure to demonstrate one of the very

ORDER- 5

few circumstances that would justify departing from the notice requirement. *See e.g.*, Case No. C12-1207MJP, Dkt. # 7; Case No. C06-298JLR, Dkt. # 10.

      The court also has concerns about the scope of the proposed TRO, which appears to be overly broad.  Plaintiff seeks a TRO that (1) requires defendants to stop misrepresenting that consumers have a preexisting business relationship, that consumers have agreed to purchase a listing, that consumers owe money to defendants, and the nature of defendants' relationships with the consumers and the purpose of their communications; (2) requires defendants to post a notice on their websites that the FTC has filed a lawsuit alleging deceptive practices; (3) freezes defendants' assets, wherever located; (4) requires third-party entities holding defendants' assets to hold and prohibit withdrawal of such assets and requires them to provide the FTC with copies of all accounts; (5) requires third-party entities with whom defendants maintain an account or mail receiving box to retain and forward to Ms. Stansell any mail received; (6) requires defendants to provide a list of all locations where any defendant has received mail from January 1, 2009 to the date of the order; (7) requires defendants to stop attempting to collect or assigning any right to collect payment for defendants' internet directory listings; (8) requires defendants to provide the FTC with complete financial statements; (9) prohibits defendants from destroying evidence or creating or operating a new entity to continue their business; (10) prohibits defendants from disclosing customer information; and (11) requires defendants to take steps to repatriate all documents and assets held by defendants outside of the United States and prohibits defendants from interfering with repatriation.[2]  Dkt. # 3-1.

---

[2] The court notes that plaintiff has not provided any argument or authority with respect to many of the requested actions in the proposed TRO, including, but not limited to, requirements on third-party entities or requirements to prohibit defendants from disclosing customer information.  Additionally, plaintiff has not provided sufficient legal authority that limited, expedited discovery is appropriate here.  The only case cited by plaintiff, *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946), did not address limited, expedited discovery.

1    This overly broad TRO, like the proposed TRO before the Honorable Marsha J.

2    Pechman (Case No. C12-1207MJP, Dkt. # 7), would effectively shut down all aspects of

3    defendants' business without requiring plaintiff to meet any standard of proof.

4    Accordingly, the court finds that plaintiff has failed to demonstrate that it is

5    entitled to an ex parte TRO.

6    With respect to the motion to seal, plaintiff requests that the court keep the entire

7    docket under seal until 72 hours after the court takes action on the ex parte motion for

8    TRO or until all defendants are served, whichever occurs first.  Dkt. # 2.  Plaintiff has

9    demonstrated good cause to keep the case temporarily sealed.  Local Rules W.D. Wash.

10   CR 5(g).

11   For all the foregoing reasons, the court DENIES plaintiff's motion for ex parte

12   TRO and GRANTS plaintiff's motion to seal temporarily.  Plaintiff has ten days from

13   entry of this order to re-file its motion for an ex parte TRO.  Alternatively, plaintiff may

14   provide notice to defendants within twenty days of this order, and inform the court that it

15   wishes to renew its motion.  The court will then set an expedited briefing schedule.  The

16   record shall be sealed until 72 hours after an ex parte TRO is issued or until all

17   Defendants have been served within twenty days of this order.  If the latter occurs first,

18   plaintiff is ORDERED to notify the court when all Defendants have been served.  The

19   Clerk is DIRECTED to provide a copy of this order via U.S. Mail and e-mail to plaintiff.

20   Dated this 10th day of June, 2014.

21

22

23   _____

24   The Honorable Richard A. Jones
     United States District Judge

25

26

27

ORDER- 7